FILED'19 JUL 31 10:04USDC-ORM

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Oregon

| | |
|---|---|
| United States of America<br>v.<br>Raeonna Monet Hayes<br><br>*Defendant(s)* | )<br>)<br>) Case No. 1:19-mj-00132-CL<br>)         ~~1:19-cr-00327-AA~~<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 9, 2018__ in the county of __Jackson__ in the _____ District of __Oregon__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Conspiracy and Possession with Intent to Distribute Heroin |

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Adam Bennett, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/31/19

_____
*Judge's signature*

City and state: Medford, Oregon            MARK D. CLARKE, U.S. Magistrate Judge
*Printed name and title*

DISTRICT OF OREGON, ss:			AFFIDAVIT OF ADAM D. BENNETT

## Affidavit in Support of a Criminal Complaint

I, Adam D. Bennett, being duly sworn, do hereby depose and state as follows:

## Introduction and Agent Background

1.	I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since March 2012. I am currently assigned to the FBI office in Medford, Oregon. I completed five months training at the FBI Academy in Quantico, Virginia where I learned the skills necessary to conduct federal criminal investigations, including investigating crime scenes, interviewing witnesses and suspects, and writing reports and affidavits. I have over five years of experience in the Medford FBI office working with experienced FBI agents as well as the Medford Area Drug and Gang Enforcement Task Force. I have also received specialized training to include the Department of Justice Asset Forfeiture and Money Laundering Section (AFMLS) Financial Investigations Seminar, as well as the AFMLS Basic Organized Crime Drug Enforcement Task Force Financial Investigations Seminar. I have experience investigating complex drug trafficking organizations, bank robberies, and child exploitations, as well as other violations of federal law.

2.	I submit this affidavit in support of a criminal complaint and summons for Raeonna Monet Hayes ("Hayes"), D.O.B. XX-XX-1988, for possession with intent to distribute heroin and conspiracy to do the same in violation of Title 21, United States Code, Sections 841(a)(1) and 846. As set forth below, there is probable cause to believe and do believe that Hayes committed possession with intent to distribute heroin and conspiracy to do the same in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

## Applicable Law

4. Title 21, United States Code, Section 841(a)(1) provides that it is unlawful for any person, knowingly or intentionally, to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense a controlled substance (i.e. heroin). Title 21, United States Code, Section 846 provides that it is unlawful for any person to attempt or conspire to violate the above section.

## Statement of Probable Cause

5. Law enforcement began investigating associates of Gharrett Parker ("Parker"), XX-XX-1984, in January 2017. During 2018, a confidential reliable informant (CRI) advised that the CRI knew Gharrett Parker for approximately three years prior to 2018. During that time, the CRI purchased multiple ounces of heroin from Parker multiple times per week in the Medford, Oregon area and called Parker at telephone number 541-816-2635. Parker eventually ceased traveling to Oregon to distribute heroin. Afterwards, the CRI traveled to Yreka, California multiple times to purchase heroin from Parker. The CRI also indicated that Keshion Coilton ("Coilton"), XX-XX-1996, distributed heroin for Parker in Yreka, California.

6. On April 29, 2018, at approximately 8:19 p.m., telephone number 702-844-3591 sent Parker's telephone number, 541-816-8006, a text message which read "This Ray". Parker saved telephone number 702-844-3591 as "Rea" in his phone's contacts list. On May 6, 2018, based on hotel records, Hayes rented room 33 at the Klamath Motor Lodge located at 1111 South Main Street, Yreka, California. On May 8, 2018, at approximately 2:14 a.m., telephone number 702-844-3591 sent Parker text messages which read "Tell b same spot same room #33" and "At the lodge". Based on this information and the specific text messages sent between Parker and this phone number, I have reason to believe that throughout April and May 2018, 702-844-3591 was a cellular telephone number being used by Hayes.

7. On May 9, 2018, at the direction and under the control of law enforcement, the CRI sent a text message to Parker via telephone number 541-816-2635 and ordered two ounces of heroin. The CRI was within the District of Oregon when the CRI requested heroin from Parker. Parker told the CRI to come to Yreka, California. The CRI was also within the District of Oregon when Parker agreed to provide the CRI with heroin and asked the CRI to travel to Yreka, California. The CRI had not moved out of Medford, Oregon since having previous dealings with Parker, and Parker had knowledge of where the CRI lived and distributed the heroin that the CRI would regularly receive from Parker.

8. Once the CRI was in Yreka, California, Parker told the CRI to rent a room at the Motel 6 in Yreka, California. The CRI rented room 119 at the Motel 6. At approximately 4:40 p.m., Parker arrived at the room in a silver 2015 Nissan passenger car bearing California license plate number 7KSP657. Parker met the CRI in room 119, wearing a blue baseball cap. Parker asked the CRI to help him by finding him more customers. Parker left the room with a white

**Page 3 – Affidavit of Adam D. Bennett**            **USAO Version Rev. April 2018**

do-rag, instead of the blue baseball cap. Parker, using telephone number 541-816-8006, exchanged the following text messages with Hayes at telephone number 702-844-3591 on May 9, 2018 (all times are approximate):

- 3:31 p.m. – Parker to Hayes – "Yooo"
- 4:04 p.m. – Parker to Hayes – "Aye", "Wya cutty"
- 4:05 p.m. – Hayes to Parker – "My bad I was sleep", "I see whip but not u?" (I know from my training and experience that a "whip" refers to a vehicle.)
- 5:06 p.m. – Parker to Hayes – "Aye"
- 5:07 p.m. – Hayes to Parker – "Yea??", "I was just texting kiki", "Sup."
- 5:12 p.m. – Parker to Hayes – "Make 45", "Gs" (I know from my training and experience that the above communication means to make 45 grams of heroin.)
- 5:13 p.m. – Hayes to Parker – "Ummmmmmm....", "K I'm omw to the spot then"
- 5:14 p.m. – Hayes to Parker – "Leave the rest???", "Imma just walk the rest back to then."
- 5:14 p.m. – Parker to Hayes – "2 bands at the 6", "Waiting on you" (I know from my training and experience that this references the aforementioned 45 grams of heroin being sold for $2,000.00 at the Motel 6.)
- 5:15 p.m. – Hayes to Parker – "O OK got it", "Car???"
- 5:15 p.m. – Parker to Hayes – "119", "Room" (I know from my training and experience that this means the transaction will take place in room 119 at the Motel 6.)
- 5:15 p.m. – Incoming – "Aight"

9. At approximately 5:49 p.m., a 2002 Ford Taurus bearing Oregon license plate 900 CLJ arrived at the room. Hayes was the registered owner of the aforementioned vehicle. Hayes exited the vehicle and entered room 119, where she gave the CRI heroin, and the CRI gave Hayes $2,200.00 in exchange. Hayes left the room at approximately 5:50 p.m. The controlled purchase was surveilled and audio recorded. The CRI was able to specifically identify Hayes from the transaction after being shown a single photo of Hayes by law enforcement. I also personally observed Hayes arrive at and leave room 119 between approximately 5:49 p.m. and 5:50 p.m. The CRI submitted the heroin received from Hayes to law enforcement; it field tested positive as heroin and weighed approximately 42.22 grams. The Oregon State Police tested the 42.22 grams of heroin and determined the heroin weighed 41.06 grams +/- .02 grams. I know from my training and experience that 41 grams of heroin is a distributor amount of heroin, not a user amount of heroin.

10. On May 22, 2018, at the direction and under the control of law enforcement, the CRI sent a text to Parker via telephone number 541-816-2635 and ordered three ounces of heroin. Parker again directed the CRI to meet at the Chevron gas station in Yreka, California. A silver 2015 Nissan passenger car bearing California license plate number 7KSP657 arrived at the Chevron gas station. Coilton exited the driver's side rear passenger door and entered the CRI's vehicle. Coilton instructed the CRI to drive to the Starbucks in Yreka, California. The silver 2015 Nissan followed the CRI's vehicle. The CRI gave Coilton $3,300.00, and Coilton gave the CRI 61.29 grams of heroin in exchange. Coilton told the CRI that if the CRI ordered a large amount of heroin, he would ask Parker to pay for a taxi for Coilton to travel to Oregon to deliver the heroin. Coilton exited the CRI's vehicle and entered the silver 2015 Nissan. The

silver 2015 Nissan then drove to the Shell gas station across the street from the Starbucks in Yreka, California. Law enforcement observed Hayes exit the passenger side of the vehicle. A black male adult was driving the silver 2015 Nissan, wearing a white do-rag, and his build matched Parker's build. The controlled purchase was surveilled and recorded. The heroin field tested positive as heroin. The Oregon State Police Laboratory tested the 61.29 grams of heroin determined the heroin weighed 56.15 grams of heroin +/- .02 grams. I know from my training and experience that 56 grams of heroin is a distributor amount of heroin, not a user amount of heroin.

    11. On June 21, 2018, a cooperating witness (CW) was interviewed. The CW advised he/she purchased heroin from Parker in Yreka, California and transported the heroin back to Medford, Oregon. The heroin transactions with Parker were normally conducted by either Hayes or Coilton. On multiple occasions, Parker paid the CW in heroin to transport Hayes to Stockton from Yreka and from Stockton to Yreka. On June 16, 2018, the CW coordinated a heroin transaction with Hayes. The CW paid Hayes approximately $1,200.00. Hayes took the money and did not provide heroin to the CW.

## Conclusion

    12. Based on the foregoing, I have probable cause to believe, and I do believe that Raeonna Monet Hayes committed possession with intent to distribute heroin and conspiracy to do the same in violation of Title 21, United States Code, Sections 841(a)(1) and 846. I therefore respectfully request that the Court issue a criminal complaint and summons for Raeonna Monet Hayes.

    13. Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the summons were all reviewed by Assistant United States Attorney (AUSA) Adam Delph, and AUSA Delph advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and summons.

_____
ADAM D. BENNETT
Special Agent, FBI

Subscribed and sworn to before me this ___31___ day of July 2019.

_____
MARK D. CLARKE
United States Magistrate Judge